May it please the Court. I'm John Gayhart for Mr. O'Brien-Reynoso. The main issue in this asylum case is credibility. I'm sorry? The main issue in this asylum case is credibility. In order to quickly summarize the case, we have the son of a high-ranking Peruvian military officer who was held responsible for the deaths of hundreds of suspected terrorist guerrillas by terrorist groups themselves. Why is the main issue credibility? The main issue is credibility because Judge Bartolome, the immigration judge, found that Mr. Reynoso was not credible. But the BIA said it was decided without regard to the credibility, so don't we just do that also? And then if we were to remand, then the BIA could reach the credibility issue at that point? Well, BIA didn't decide the credibility issue. Why should we? Because the BIA seems very much in support of Judge Bartolome's credibility issue. Absolutely not. They said even if it's not so. They said we don't need to reach it. In our view, we need not reach the immigration judge's credibility finding. But that was one of the main reasons why. Okay, but they didn't reach it. I think there was something else. Move on, will you? Credibility is not an issue. Okay. Thank you, Judy. Well, the asylum theory itself, I believe, is a very tight theory in this particular case. You have past persecution in the form of you. What is the persecution that he suffered? What specific harm did he suffer? The death threats to his family. No, wait a minute. Death threats to his family. What did he suffer? What persecution did this man suffer? He suffered death threats to his family that he was a part of because the. . . Judge Newman is asking, a lot of times we have people that are beaten, they're hospitalized, they're all of those things, or they're directly threatened, or what you're saying. . . Give us your best case about his. . . No physical harm. All right, so what's your best case about. . . What are your best facts that he was persecuted, and what is your best case supporting that? Persecution is based on death threats, credible death threats. Indira Luminoso, an MRTA, more than capable of carrying out the death threats, the decapitated. . . Give me an example of a threat. Give me one example of a threat to the family. What was it? Telephonic threats, Your Honor. No, no, what did they say? What was the threat? The threat was, we're going to get you. We're going to kill you, and I'm going to get who? Antonor Renoso, the petitioner's father, and his family. Did they say that? You or your family, which one? Yes, they threatened to kill the family because they were trying to break through the military garrison's security. . . I haven't seen it. I don't know what they're trying to do, but I'd like to know what they did, what they said. Anyway, it's a pretty dubious claim. And assuming that's true, which I sort of assume, again, procedurally, did the IJ or the BIA ever decide whether there was past persecution? No. What the BIA said, what the IJ said, even if the Respondent were credible, he has not shown that any of the past harm that he's faced or any future harm would be an account of one of the enumerated grants. So they found that it was an account of one of the enumerated grants, but I don't see anywhere that anybody ever found that it didn't rise to past persecution. They didn't focus on the issue of past persecution, and that was, I think, an important part, because living in a secured military garrison and still having people able to get into that garrison, find out your family's phone number, leave a decapitated cat on your front doorstep, be able to identify your family card. . . But whatever we may think, I mean, it does appear to be a relatively weak persecution claim, but no one's ever decided that at the agency. Is that right? That's the way I read the record, Your Honor. All right. What they have decided is a nexus question. Nexus to what? The nexus question, we have two theories of nexus. I want to know what was decided. Again, I'm trying to focus on an administrative law problem here. What did they decide? What was your theory? On the exact. . . The BIA decision is on that particular issue. Well, I guess that's. . . Did they decide whether his renosis family constituted a particular social group? No. No, it's not. Again. They did decide that there was no imputed political opinion, and you're not even arguing that. Is that right? No. I think that imputed political opinion via family association is a valid nexus. It may be a valid nexus. Are you arguing that in this Court now as opposed to the family as a social group? Yes. Those two nexus theories, the social group theory based on family membership, this Court has several precedents, Melina Estrada v. INS, Lynn V. Ashcroft, Sanchez Trujillo, of course, and even Santos Lemos v. Mukasey speaks to that. On the issue of imputed political opinion by a family association, this Court has     And then you have the case of the family association, of course, Rivas v. INS, again, the close association. Can you show me where in your briefs you're arguing this? On the issue. On the briefs? Yes. I mean, as I read the record or the I.J. opinion, he rejected the imputed political opinion theory. Where are you arguing about that? I see you have an argument about credibility, which as we say doesn't seem to be before us. And then you have an argument, the B argument, which says they didn't consider past persecution, which seems to me to be accurate. But where do you argue that they should have found imputed political opinion? The argument is encased within, I think, both parts of A and B. I didn't make it a separate argument because, again, the death threats by Sandero Luminoso terrorists. That's the nexus, and the motivation can either occur through the imputed political opinion theory or the social group theory because it's based on the family membership. Either way, whether you're going for imputed political opinion by a family membership or social group by a family membership, it's tied in with his father's military actions is why he was threatened and his family was threatened by these terrorist groups. Well, it seems to me that the IJ didn't explicitly state whether Luminoso's family did constitute a particular social group. And, you know, I mean, I don't know how we can do any of these things in the first instance. No. That's why, again, the one thing that, again, jumped out at me when I read this record. I didn't do the case down below. Mr. Harugi, who's here, did the case down below. But what jumped out at me is that the judge, because this is a pre-Real ID Act case, most immigration judges always focused on credibility in order to deny asylum cases. It's interesting that as the standards became higher and the Real ID Act came into play, we have had far fewer credibility-based denials of asylum cases than we had in the past, because now the standards for asylum are generally higher and the judges are focusing more on the legal issues. So is the bottom line here that the BIA, IJ and BIA, have not decided a series of things that they'd have to decide, particularly past persecution and whether there is a nexus in the sense of is there a particular social group and is there perhaps is there an imputed political opinion? Correct. And haven't decided any of that stuff and the result is a remand? Yes. Is that your argument? I think that that's necessary because But you may end up at that point with a determination on the credibility finding by the BIA, which could be adverse, but at this point you don't have one. It's not specifically adverse, but they didn't disagree with the IJ's finding either. Well, no, they said they weren't getting to that. They did. The confusing part was that they used the Burbano word, which tends to mean that they're accepting what the IJ said, but then they said they didn't reach that alternate ground. So. Yes. So that leaves us kind of empty-handed and with a Mr. Geha, what basis do you have for thinking that Sundaro, a woman also, is a threat? Sundaro. Today. Today? Yes. Oh, if you read even the Department of State country reports, but also Amnesty International reports. What country report? What year? Tell me. This year's even, and you can go back every single year for the last You're saying that, if I look at the year, what, 2009? U.S. Department of State. What's that? The U.S. Department of State country reports. 2009, is that right? Is that the year you're citing? The A.S.I.? Are you citing the year, 2009, or what? Yes, 2009, the latest country report was issued March 11th, 2010, but you can go back every single year, and present country conditions in Peru are such that Sundaro Luminoso is resurging, and they have become more powerful again, and they have a new source of income through narco trafficking, and But none of this is in the record now, but it could be. It could be, because there have been changed country conditions since 2005. All right. Thank you very much, Your Honor. Are they engaging in terror effectively? Yes, Your Honor. Are they active? Yes, they are. Good. Thank you very much. Thank you very much, Your Honor. Good morning, Your Honors. Ann Wellhoff for Respondent, United States Attorney General Holder. May it please the Court. Maybe you can help us out. I think you've seen that, I mean, Mr. Rinoso seems to have certain weaknesses in his case, but there's also procedural difficulties here and certain things that weren't determined. You know, how can we decide this case here in the posture that we have it? Well, I believe that you can, Your Honor. There was two alternative dispositive grounds for denial of this claim. First was credibility, and as Your Honor has correctly pointed out, that is not at issue in this case. Because the BIA didn't seem to reach that, correct? Correct. And it clearly did not. So we have to assume him to be credible? Correct. And the immigration judge in a very lengthy, thorough, detailed, 18-page decision made an alternative dispositive finding. This case is simply a lack of proof, a failure to meet burden of proof. And that decision is grounded. But he put it into, it's also a very confusing document because he says he hasn't shown that it was a cap to one of the enumerated grounds, but he doesn't say whether he has a well-founded fear of future harm.  He says whether he has a well-founded fear of future harm. Without a past persecution finding, I don't see how he can reach the changed country conditions because, right, because without a past persecution finding, we don't know where the burden is. Correct. And I do believe that the narration about the country conditions is speaking to whether he has a well-founded fear of future harm. Country conditions are. Well, that's true, but there's no past persecution finding. I believe there is. Where? Okay. In two places. Now, to the extent, if you're asking did they find that the harm you suffered did not rise to the level of persecution, the answer is no.  However, persecution includes, to be persecution, it must be harm that's bad enough and on account of. Both of those things are required, and the agency's decision in this case rested on the nexus portion of it. I don't – if we assume that the harm was bad enough. Because he found that it wasn't of social group or because he found. Well, the board did not address it. I think if you read the immigration judges, again, very thoroughly. So how can we know if there's a nexus if we don't know if the nexus is to what? Well, we'll just assume that the harm he suffered was persecution. The harm that is testified about is solely threats, unfulfilled threats. We did have a shooting of the vehicle. Nobody injured. We had a dead cat on the door, and we had phone calls. But for the most part, that was it. That was the extent of the harm that both the petitioner and his father mentioned. Now, the agency said, okay, basically the opinion starting on page 53 of the IJ's decision says, okay, let's assume you're credible. Everything you said is true. And assume that that harm is persecution. You still have not shown it's on account of any protected ground. First, even assuming Reynoso family is a social group, you haven't shown that harm was suffered or that you have a well-founded fear of harm because you are a Reynoso. And the immigration judge explained very clearly why that is the case. And the total grant for that was because his grandfather was okay? This record is pretty scant. And that is correct. As you read through the testimony, that is really the only other thing they mentioned that could justify them saying they fear or he fears harm based on his family association is he said, the petitioner and the father both said, that his wife was in Peru and that she was threatened to be abducted. But it was a little unclear whether she was actually abducted. I do not believe the evidence is that she was. And they said it was because she was connected with the Reynoso family. On cross-examination, and I would point the Court to administrative record page 266, DHS counsel is pretty adamant trying to find out how do you know that the action, the threats to the wife in Peru were in fact because she was a Reynoso. How do you know that? And she pushes the witness for an answer. And the only thing he could come up with is, quote, unquote, because it's logical. That is what he said. That is his argument for why he can't think of any other reason that they'd want her. It's logical. That's not compelling evidence that there's a nexus or that. It's not what the BIA, what they said. My understanding is what they said is because they're not married anymore. But that's really not connected to the problem. Well, simply that alone, standing alone is not going to be enough to say there's no nexus. But there's simply no evidence on this record that they were after the wife because she's a Reynoso. There's no evidence that the Reynoso name has a badge of danger associated to it and that he has a risk if he goes back there because he's a Reynoso. And, again, the board didn't reach the social group question because it didn't need to. It said, okay, even if Reynoso is a social group, you haven't shown that you're at risk because you're a Reynoso. And I think the IJ does a fairly thorough job of explaining why not. Additionally, the imputed political – the IJ, as I read it, said only that they're not married anymore. He cites the Spillania case, which is really, as far as I could tell, really not directed at the point here, which is not that they're going to continue to go after her, but that that's evidence that they're going to go after somebody connected to the family. And he doesn't say anything about there not being sufficient evidence that that was why they went after her. And then he goes on to the grandfather, which he does go on and on about at some length. And in order to know whether the grandfather issue was relevant, for one thing you'd have to know what the social group was. I mean, nobody's actually figured that out, whether the social group is the nuclear family or the larger family or what. Or whether it's a social group at all. Well, obviously, that – whether a family can even be a social group is an evolving area of the law. It's a complicated area. And that was not reached in this case. And Respondent maintains that you don't need to reach that. Let's assume that Renoso – let's assume this family could be a social group. The agency has articulated why. He's not at risk because he's a Renoso. And the reason is because of his grandfather. That's one reason. And what's the other reason? Well, I think it's very clear that he did not present any evidence that his wife was targeted because she's a Renoso. That's not the ground that's in the opinion. I thought that was sort of a given. Well, I believe, starting on page 15, additionally, the immigration judge specifically says, this could have been – there's no evidence that any of the threats or the targeting were because you're a Renoso or that it wasn't just retribution because the Shining Path was angry that your father was involved in some violent conflicts. For all we know, it was purely just retribution, which is not a crime. It was a protected ground under this Court's precedent. And the Court says there's really no evidence as to, you know, what – But isn't that essentially the issue that was remanded in Thomas? That is, in that instance, the argument – Thomas was the case that went to the Supreme Court, the South African case. Yes. And there the argument was that they were going after the family because they hated the father, because the father was a bad guy, so they were going after the family. So I don't know why the fact that they're doing it for retribution may or may not be a reason. That's why it was remanded to the BIA. It was because they hadn't decided it there and they hadn't decided it here either. Well, I think the problem with this case, as you look through the record, it's an utter lack of proof. First of all, I would like to say something about the imputed political opinion, because that is one of the nexus grounds it's alleged. There is no evidence whatsoever as to what this father's political beliefs are. The evidence is he served in the military. He was a military officer. We do not know. Now, he came to – well, he came to court, and he's apparently here illegally, right? He testified at the hearing? The father did not receive asylum, so, yeah, I guess he would be – I don't know – Well, there was some notion that his case had been closed, which I guess means there's some administrative way that that's done, where although he's – he didn't receive asylum, he's just not going to be removed or something like that? It says that his case was administratively closed. That's what it said. Your Honor, I'm sorry. I cannot speak to that. I'm not – I'm not sure. My understanding of his disposition was a denial of asylum. Well, he was denied asylum. But whether he's here in danger of removal is really, I think, what Judge Palhan's asking. And as I read the record, for some reason, and I can't quite figure out, he doesn't appear to be. One would think that must be true, because it would be unlikely he would just show up to testify if they thought they were going to take him and throw him out. One of them was there. Again, I can't speak to his current status. I apologize, Your Honor. What's your position on the Shining Path? What kind of threat is it today? Well, based on the record in this – or the evidence in this record, I would point the Court to the various country reports saying that the prevalence of the Shining Path in the 1980s has now greatly diminished. I'd refer you to administrative record at 1021. That's the State Department report. It notes that the once great threat from the Shining Ban has been greatly reduced or eliminated. The leader of the Shining Path has been captured, tried, and jailed, and he is still serving a life sentence. Now, your opponents cited the 2010 report. Do you ever – have you looked at that? Your Honor, well, yes. It's not in the record. However – so obviously it's extra record evidence. But, again, we do not – our position is that the Shining Path certainly has connections with narcotic traffickers and is receiving funding, and there's perhaps an attempt at a resurgence. But we do not – it's based on, you know, the record – or in this case, there's no evidence that the Shining Path is anything but a diminished threat. And there's really – even to today, I would say, although it's not in this record, that we're not – we don't believe it's the Shining Path. So just so that I understand your argument, that you acknowledge that the BIA didn't necessarily adopt the adverse credibility of the IJ, correct? Correct. So we have to assume Mr. Renoso credible. And you're saying because there's no there there, there's no evidence of anything that – There is not. That we can affirm the IJ, deny the petition? I believe you can. The IJ thoroughly explained why she found that any of the alleged harm was not on account of a protected ground, assuming the Renoso family's social group, assuming there's some political opinion. But how – if the IJ had found him to be adversely, you know, not credible, how then can we adopt what the IJ said? Because I think – because they made an alternative dispositive finding on the assumption of credibility expressly and simply said there's a failure of proof in this case. The evidence is – there's no compelling evidence of any connection between the alleged harm and a protected ground, be it imputed political opinion. Again, you will not find any evidence in this record of what is the political opinion of the father. He definitely served in the military. He was a military officer. But there's no nexus between – there's no evidence to show that the Renoso family is still wanted by the Shining Path or is wanted by the Shining Path. This particular alien is at risk. There's just no evidence. Okay. Thank you. Okay. Thank you very much. Thank you for your argument. Thank you both for your argument. The case of Renoso v. Holder is submitted. And we will proceed to the next case on account of LaTrient v. Holder. Thank you. Thank you.
judges: Noonan, Berzon, Callahan